[Cite as *State v. Crawford*, 2021-Ohio-785.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-074** |
| ALLEN A. CRAWFORD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2019 CR 000780.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* and *Teri R. Daniel,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Aaron A. Schwartz, Megan M. Patituce* and *Lauren Kay Wazevich,* Patituce & Associates LLC, 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Allen A. Crawford appeals from the judgment of the Lake County Court of Common Pleas, sentencing him to an indefinite term of 33 to 38 and one-half years. Appellant challenges the duration of his sentence, the consecutive nature of the judge's order, as well as the trial court's refusal to merge certain counts for purposes of sentencing. We affirm.

{¶2} On July 21, 2019, V.R. and A.B., the principal victims, were in an apartment with appellant's and V.R.'s three young children. Appellant arrived at the apartment carrying a backpack and brandishing a firearm. He immediately ordered A.B. and V.R. to the floor of the residence. The children were ordered to their room. Appellant demanded the women's cell phones and he commenced binding their hands behind their backs with black duct tape. Appellant announced he planned on killing them both and made threats regarding how he would shoot them and leave with the children. During these overtures, he was pouring lighter fluid over the women and throughout the apartment and advising the victims he intended to kill them. While V.R. was pleading for her life, appellant advised her to be quiet; he then struck her with the firearm. Appellant pulled out a knife and then stabbed both women in the neck; he stabbed V.R. two to three times and A.B. once. Appellant retrieved the children, ignited the lighter fluid, and fled the apartment.

{¶3} After appellant left, A.B., despite being on fire, was able to free herself from the binding. She was able to extinguish the fire on her body, as well as in other areas of the apartment. She also located a cell phone appellant discarded and she called 911. Emergency responders arrived and transported both women to medical facilities where they were treated for their burns and other wounds. After being treated, A.B. recounted the attack to police and identified appellant as the assailant. Meanwhile, police had received a 911 call from appellant stating he attacked the women at the address they were located; appellant told police that, upon their arrival, they would find deceased people at the residence. Appellant was ultimately apprehended and taken into custody.

{¶4} On November 4, 2019, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree, with a firearm specification; one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree, with a firearm specification; two counts of attempted aggravated murder, in violation of R.C. 2903.01(B) and R.C. 2923.02, felonies of the first degree, each with a firearm specification; two counts of attempted murder, in violation of R.C. 2903.02(A) and R.C. 2923.02, felonies of the first degree, each with a firearm specification; two counts of kidnapping, in violation of R.C. 2905.01(A)(2), felonies of the first degree, each with firearm specifications; two counts of kidnapping, in violation of R.C. 2905.01(A)(3), felonies of the first degree, each with firearm specifications; two counts of felonious assault, in violation of R.C. 2903.11(A)(1), felonies of the second degree, each with firearm specifications; two counts of felonious assault, in violation of RC. 2903.11(A)(2), felonies of the second degree, each with firearm specifications; two counts of aggravated arson, in violation of R.C. 2909.02(A)(1), felonies of the first degree, each with a firearm specification; and three counts of endangering children, in violation of R.C. 2919.22(A), each misdemeanors of the first degree.

{¶5} On April 22, 2020, appellant entered a plea of guilty to one count of aggravated burglary, with a firearm specification; two counts of attempted murder, each with a firearm specification; two counts of kidnapping, each with firearm specifications; one count of aggravated arson, with a firearm specification; and three counts of endangering children, each misdemeanors of the first degree.

{¶6} After a sentencing hearing, the trial court sentenced appellant to 11-year terms for each attempted murder count, with an additional three-year, mandatory term

3

for the accompanying firearm specifications. These counts were ordered to be served consecutively to one another. He was sentenced to five years on the aggravated arson count, to be served consecutively to the attempted murder counts; the firearm specification attached to the aggravated arson was ordered to be served concurrently to the previously-mentioned specifications. Appellant was sentenced to two three-year terms for each kidnapping count, to be served concurrently with the underlying terms and, similarly, the firearm specifications attached to these counts were ordered to be served concurrently with the other firearm specifications. Finally, appellant was sentenced to 180 days in jail for each child endangering count. Appellant therefore received a total of 33 years imprisonment up to a maximum term of 38 and one-half years. Appellant now appeals and assigns three errors. We shall address his first and third together, as they are related. They provide, respectively:

{¶7} "The trial court erred in sentencing Mr. Crawford to serve consecutive sentences.

{¶8} "The trial court erred in sentencing Mr. Crawford to a 33-38.5 year term of imprisonment."

{¶9} We shall first address the issue of the duration of appellant's sentence. Recently, in *State v. Gwynne*, 156 Ohio St.3d 279, 2019-Ohio-4761, the Supreme Court of Ohio clarified that R.C. 2929.11 and R.C. 2929.12 apply to the review of the duration of individual sentences. *Gwynne, supra*, at ¶17-18. R.C. 2929.11 addresses the purposes and principles of felony sentencing and R.C. 2929.12 sets forth "seriousness" and "recidivism" factors. A sentencing court is not required to use specific language and render precise findings to satisfactorily "consider" the relevant seriousness and recidivism factors. *State v. Long,* 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶79.

4

Thus, we presume a trial court considered the statutory purposes, principles, and factors from a silent record. *State v. Morefield*, 2d Dist. Clark No. 2013-CA-71, 2014-Ohio-5170, ¶41.

{¶10} Here, the trial court expressly considered the purposes and principles of felony sentencing as well as the seriousness and recidivism factors it found relevant to appellant's case. Specifically, the court stated at the sentencing hearing:

> {¶11} I have reviewed the presentence report. I've reviewed the past reports of Dr. Rindsbert. I reviewed the sentencing memorandum from [defense counsel] which include a number of letters in support of [appellant.] I did not, for the record I did not receive any victim impact statements.
>
> {¶12} I have considered the purposes and principles of felony sentencing in 2929.11 every aspect of that statute. I've considered 2929.12, every aspect of that statute. I've listened to the individuals who spoke today on behalf of [appellant], listened to [appellant], listened to counsel.
>
> {¶13} So this is a unique case from the standpoint that it was an absolutely brutal act from that standpoint it's unique. It's also unique from the standpoint that somebody who committed such a brutal act that doesn't have a lot in his background. There is some indication of violence in the past because you got an assault, you got a domestic violence, you got a weapons charge. Most of it I suspected when reviewing the presentence report probably relates to too much drinking. I don't have the specifics on those cases but those offenses taken with what you stated in the presentence reports would lend itself to indicate that.
>
> {¶14} So you for the reasons that are outlined in the police report and the presentence report were angry about something specific, leaned back on you habit of drinking to excess and you acted upon it and you went in there with the tools to accomplish what you wanted to accomplish because of that and you walked out of there thinking you accomplished it, right, you thought that you had killed them both?
>
> {¶15} [Appellant]: (Nodding affirmatively)

{¶16} THE COURT: That's what you told, I think you told your brother-in-law and that's certainly what you told the police when you called. Now the two brutal acts were committed against the two young ladies who [were] with your children in the apartment were minding their own business and so you put them through hell because they thought, they thought they were going to die, that's clear, and you thought they were going to die, that was your intention when you went in there. So as a result of your action there are serious disfiguring physical injuries that they are never going to get over. And I'm certain based on the activity there are serious psychological injuries to both that they will likely never get over 'cause I'm not sure how somebody ever from a psychological standpoint gets over the horror [of] spending 10 or 15 minutes of knowing they were about to die with your three kids in the next room or in the room and in the next room. So I'm certain that they suffered serious psychological harm as I outlined before let alone your kids. They were young but old enough to remember what they witnessed and I don't see how they are going to forget what they witnessed between their mother, their aunt and their father. So one hopes, certainly we hope they get over it but who knows if they ever will.

{¶17} And the second group of people you put in harm's way was everybody else that lived in that apartment. You set a fire that you intended to burn and luckily one of the ladies broke free and were able to put it out. You have [in] setting that fire endangered everybody else that was in that apartment so to a certain extent you were very lucky in your ineptitude in accomplishing what you wanted to accomplish otherwise we'd be in a whole different stratosphere.

{¶18} So the issue when it comes to something like this, what I'm doing is what [the prosecutor] said a little bit earlier, how do you fashion a number for that? Your scrapes with the law in the past, both with your misdemeanor offenses and your traffic offenses are in the grand scheme of things of what comes in here relatively minor. You certainly did not grow up in a situation where you have no support, that's obvious from your mother and father on down that you had a support system that most people sitting here don't have and for whatever reason you acted as you did.

{¶19} The reason was because you were mad about something specific and unable to control your rage about that specific incident yourself. While it's true that it was your support both spoken here today, in the letters has indicated that this was out of character for you [sic]. The stark reality is that you talked about earlier with regard to the two young ladies and your kids it's happened and it's irreversible,

6

you can't take back what you did so you're faced with me fashioning a number that reflects not only you and your past life and your situation but what happened to these victims and what could have happened as a result of setting the fire.

{¶20} So that's, that's what I have in order to assist [the prosecutor] in fashioning a number. Now had you succeeded in your attempt then I'd be off here 20 minutes ago 'cause there would have been no question what would have been done and you would never have seen the light of day. No question about that so the fact is that your inability to complete what you started works in your favor at this time.

{¶21} Now even though I did not receive victim impact statements in reviewing the presentences report which includes the police report, I'm aware of the extent of what they've been through so I have, although I would have liked to find the presentence or victim impact statement it really doesn't impact what I'm doing because I'm aware of these things.

{¶22} The court then proceeded to calculate the individual terms of imprisonment it elected to impose on each individual crime.

{¶23} Appellant first contends that his conduct, while serious, was not as serious as conduct normally constituting the offenses for which he pleaded guilty. He bases this point on the inapplicability of various other R.C. 2929.12(B) factors. We find this point somewhat off base.

{¶24} R.C. 2929.12(B) sets forth a non-exhaustive list of factors a court may consider. *See State v. Bilicic*, 11th Dist. Ashtabula No. 2019-A-0047, 2020-Ohio-982, ¶17. As such, a court is not confined to the factors set forth under the statute, but can consider other relevant nuances of the criminal acts in creating an appropriate sentence. Moreover, we recognize the trial court placed significant weight upon the nature of the crime, the physical and psychological harm caused to the victims, appellant's relationship to the victims (including the children), as well as appellant's admitted intention to kill the same. A trial court, in considering the R.C. 2929.12 factors,

7

is vested with the discretion to "determine the weight to assign a particular statutory factor." *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Accordingly, the inapplicability of certain other factors does not necessarily militate against the trial court's determination, particularly where, as here, the nature and seriousness of the crimes is fairly shocking and savage. We, therefore, conclude the inapplicability of certain statutory-seriousness factors does not, in this case, suggest appellant's conduct was somehow not as serious as other conduct which would otherwise constitute the criminal acts to which he pleaded guilty.

{¶25} Next, appellant contends there were factors indicating his conduct was less serious that weighed against the court's ultimate sentence. For instance, he notes he led a relatively law-abiding life prior to the crimes in question and accepted full responsibility for his actions. He further emphasizes his substance abuse, while not excusing his behavior, provides a context for his actions and, because he is now purportedly sober, this will no longer be an issue.

{¶26} The court did consider the foregoing points but did not find they rendered his conduct less serious in relation to the commission of the crimes. We discern no error in the court's reasoning. Although appellant's criminal record was not severe prior to the incident, it does include an assault and domestic violence. We do not know the facts of those crimes, but they nevertheless suggest appellant has had occasion in the past to act out violently. And, even assuming appellant is sober, the court could reasonably conclude, in light of the facts, that any relapse could lead to a highly combustible and violent outburst in the future. Finally, appellant accepted responsibility and exhibited contrition; still, the court stated the harm caused by his actions is, for these victims, "irreversible." Keeping in mind the full context of the incident, the court

was entitled to conclude that appellant's acceptance of responsibility did not diminish the seriousness of his conduct. We, therefore, conclude the trial court did not err in calculating the individual durations of each crime to which appellant pleaded.

{¶27} Next, we consider the consecutive nature of the sentencing order. "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court to review the record, including the findings underlying the sentence, and to modify or vacate the sentence if it clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)." *State v. Maple*, 11th Dist. Ashtabula No. 2018-A-0091, 2019-Ohio-2091, ¶9, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶28. "Under this standard, an appellate court upholds the imposed felony sentence unless: (1) required mandatory findings are clearly and convincingly not supported by the record; or (2) the sentence is clearly and convincingly contrary to law." *State v. Aldrich*, 11th Dist. Ashtabula No. 2017-A-0033, 2017-Ohio-8944, ¶32 (citations omitted).

{¶28} R.C. 2929.14(C)(4) states:

{¶29} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶30} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶31} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or

9

more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶32} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶33} At the sentencing hearing, the trial court stated:

{¶34} Now with regards to those consecutive sentences I find that consecutive sentences are necessary to protect the public from future crime by you and they are necessary to protect the public. There is no question that the brutality of the acts that you committed in the context of everything we discussed here warrants that consecutive sentence are necessary to protect the public from future crime by you.

{¶35} * * *

{¶36} With regard to the consecutive sentences one other finding is that at least two of the offenses were committed as part of one or more courses of conduct. The harm caused by these offenses to both these victims and everybody else, the danger was so great or unusual that no single prison term would adequately reflect the seriousness of the conduct.

{¶37} Appellant asserts the trial court erred in sentencing him to consecutive sentences because the record does not support the trial court's finding that the terms were necessary to protect the public from future crime or to punish him. He further claims that the record fails to support the court's conclusion that the harm caused by the offenses was so great or unusual that no single prison term would sufficiently reflect the seriousness of the conduct. We do not agree.

{¶38} As noted above, the trial court could reasonably conclude that, in light of the unique and severe nature of the incident, appellant poses a threat to the public and could, if fueled by anger and alcohol, commit future crime. The court underscored the serious harm suffered by A.B. and V.R.; the likely psychological harm that the children

10

will suffer; and the harm that could have come to all who lived in the apartment building (and others) had the fire spread. The criminal actions demonstrated appellant, on that evening, lacked any sense of foresight, restraint, or empathy. Although appellant indicates such an episode is not likely to happen again, the court was entitled to find consecutive sentences were necessary to protect the public from him and punish him for his actions.

{¶39} Furthermore, as discussed above, the trial court was entitled to conclude that the harm caused was so great or unusual that no single term would adequately reflect the seriousness of appellant's actions. The court focused upon the nature and brutality of appellant's actions and the serious harm they caused. Perhaps, viewed in a vacuum, there are more gory or horrific attempted murder/kidnapping/arson cases. That is not the point. The court considered each aspect of this individual case and concluded the harm was so significant that individual sentences would essentially diminish the seriousness of appellant's conduct. We hold the trial court did not err in entering its order.

{¶40} Appellant's first and third assignments of error lack merit.

{¶41} For his second assignment of error, appellant asserts:

{¶42} "The trial court erred in failing to merge Mr. Crawford's aggravated burglary, aggravated arson, and two counts of kidnapping convictions with his two attempted murder convictions for the purposes of sentencing."

{¶43} Appellant argues the court should have merged his aggravated burglary, aggravated arson, and kidnapping counts with his attempted murder counts for purposes of sentencing. Appellant acknowledges he entered the victims' home with a firearm, bound them, stabbed them, and set them on fire. He maintains he committed

11

these acts with the same animus and thus should have been merged for sentencing. In support, appellant relies on *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314. *Johnson*, however, has been largely rendered obsolete by subsequent rulings of the Supreme Court of Ohio. *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, ¶11, citing *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995.

{¶44} The Supreme Court of Ohio in *Ruff* set forth three questions under R.C. 2941.25 in order to determine whether a defendant can be convicted of multiple offenses:

{¶45} (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. *Id.* at ¶31.

{¶46} In this matter, appellant committed and completed the aggravated burglary when, by force, he trespassed into the apartment with the victims and children present, while displaying a firearm, with the purpose of committing a criminal offense (by his own admission, murder) and threatened to inflict harm on A.B. and V.R. *See* R.C. 2911.11(A)(1). Further, the kidnappings were committed and completed when appellant ordered A.B. and V.R. to the floor and bound their hands with duct tape, with the purpose to terrorize and/or inflict serious physical harm on them. *See* R.C. 2905.01(A)(3). The attempted murders were committed and completed when appellant knowingly and purposely, stabbed each victim in the neck because, if he was successful in his ultimate goal, this conduct would have purposely caused their deaths. *See* R.C. 2923.02; R.C. 2903.03(A). Finally, appellant committed and completed the crime of aggravated arson when he knowingly doused the apartment, as well as each woman,

12

with lighter fluid and ignited the same causing each victim and the residence to catch fire. *See* R.C. 2909.02(A)(1).

{¶47} In *Ruff,* the Supreme Court "provided two alternatives to determine whether the offenses are of dissimilar import: separate victims or separate harms." *State v. Carradine*, 8th Dist. Cuyahoga No. 101940, 2015-Ohio-3670, ¶70, (Gallagher, J., concurring). Specifically, the court in *Ruff* held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B)[, Ohio's merger statute,] when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶26. Each of the four crimes involved a separate act or a separate harm (i.e., were of dissimilar import). Even if the motivation or animus was continuous throughout, therefore, the trial court did not err in declining to merge the crimes for sentencing.

{¶48} Appellant's final assignment of error lacks merit.

{¶49} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

13