[Cite as *State v. Casey*, 2022-Ohio-2199.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-T-0029** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| DARYL L. CASEY, JR., | |
| Defendant-Appellant. | Trial Court No. 2020 CR 00515 |

# **O P I N I O N**

Decided: June 27, 2022
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Rhys B. Cartwright-Jones*, 42 North Phelps Street, Youngstown, OH 44503 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}    Appellant, Daryl L. Casey, Jr., appeals the judgment sentencing him on one count of improperly discharging a firearm into a habitation and a firearm specification.  We affirm.

{¶2}    At approximately 1:00 a.m. on July 6, 2020, Casey shot Kavin Moore, a resident of the same apartment building in which Casey resides.  Multiple shots hit Moore in the leg, while other shots entered their shared building.  Following the shooting, the Trumbull County Grand Jury indicted Casey on one count of discharging a firearm at or

into an occupied structure, in violation of R.C. 2923.161(A)(1)&(C), and one count of felonious assault, in violation of R.C. 2903.11(A)(1)&(D)(1)(a) and 2941.145. Both counts were attended by firearm specifications pursuant to R.C. 2941.145.[1]

{¶3} After a jury trial, during which Casey maintained that he acted in self-defense, the jury found Casey guilty of improperly discharging a firearm into a habitation and the attendant firearm specification. The jury was unable to reach a unanimous decision on the felonious assault charge, resulting in the trial court declaring a mistrial on that count. The court ordered a presentence investigation and report and set the matter for sentencing.

{¶4} Thereafter, the court sentenced Casey to an indefinite prison term of four to six years for improperly discharging a firearm into a habitation and a mandatory prison term of three years on the specification, to be served prior and consecutive to the indefinite sentence, for an aggregate prison sentence of seven to nine years. The court dismissed the felonious assault charge on the state's motion, wherein it indicated that further prosecution of that count would not be in the interest or furtherance of justice.

{¶5} Casey assigns four errors on appeal. For ease of discussion, we begin with a consolidated discussion of Casey's second, third, and fourth assigned errors, in which he maintains the following:

{¶6} "[2.] The trial court failed to read the jury an accurate self-defense instruction in violation of U.S. Const. Amend. VI and XIV and Oh. Const. Art. 1, [S]ec. 10 (right to a jury trial)."

---

1. The grand jury further indicted Casey on one count of possession of a firearm while under disability pursuant to R.C. 2923.13(A)(2) & (B). Thereafter the trial court granted the state's motion to dismiss the possession count because Casey was not under a disability as defined in R.C. 2923.13.

Case No. 2021-T-0029

{¶7} "[3.] The trial court erred in allowing a conviction in the face of insufficient evidence in violation of U.S. Const. Amend. VI and XIV and Oh. Const. Art. 1, [S]ec[.] 10 (due process)."

{¶8} "[4.] The trial court erred in allowing a conviction against the manifest weight of the evidence."

{¶9} In his second assigned error, Casey maintains that the court erred in failing to properly instruct the jury on self-defense. A jury instruction is proper when "'(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'" *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 15 (11th Dist.), quoting *Mentor v. Hamercheck*, 112 Ohio App.3d 291, 296, 678 N.E.2d 622 (11th Dist.1996).

{¶10} With regard to the facts of the case, at trial, the evidence indicated that the apartment building in which Casey and Moore resided consists of three floors with two apartments on each floor. A common stairway is located between the apartments on each floor and leads to a landing inside the front door of the building. Casey and Moore each lived with their girlfriends and children in the second-floor apartments, located up the first flight of steps. Outside the front door is a short sidewalk and rock garden, and an adjacent parking lot.

{¶11} Moore, Moore's girlfriend Matia Wright, and Casey offered differing versions of the events leading to the shooting. Moore testified that he had never experienced any problems with Casey until the shooting. The prior afternoon, a group of people were gathered outside the apartment building engaging in conversation, including Moore and Casey. During this conversation, there was a disagreement over politics, and Moore

3

questioned who would vote for Kanye West for president, indicating that whoever would vote for him would "be stupid," particularly if that person had never voted previously. Moore noticed Casey look at him at some point after that comment. That night, Moore was having a conversation with Wright about tenants gossiping about one another, and the door to their apartment was open while they were having this conversation. At that point, Casey came into their apartment and appeared to be "on something," and Moore instructed him to back out of their apartment, and they could go outside and talk. Moore put on his shoes and headed to the front door of the building. Casey was waiting outside in the parking lot, and when Moore opened the door, he asked Casey, "What's up, bro?" or "What's good, bro?" and Casey began firing. Moore retreated through the front door and struggled up the steps back to his apartment. Moore maintained that he never attacked or came near Moore prior to him shooting. After Moore got to a chair in his apartment, he "went Live for a little bit" on social media to let his family know he was injured, while Wright attempted to stop the bleeding. Wright was panicking and crying at the time, and Moore was unsure if she noticed him on his phone. On cross-examination, Moore indicated that he is over six feet tall and weighs about 185-190 pounds.

{¶12} Wright testified that she did not interact often with Casey or his household, and she was not aware of Moore having any issues with Casey. On July 5, 2020, Wright and Moore left the group gathered outside the apartment building to take their children to Wright's mother's house. When they returned, they went inside their apartment, leaving the apartment door open, and began talking. At that point, Casey entered Moore's and Wright's apartment and seemed to speak angrily and wanted to fight. Moore told Casey to wait while he put his shoes on, and they could go outside and talk. Moore did not have

4

any weapons with him when he left the apartment. After Moore left, Wright heard the front door of the building close and then heard shots fired. Moore returned to the apartment, limping, with blood dripping from his leg. On cross-examination, Wright acknowledged that Casey is small in stature. She denied that Moore streamed on Facebook Live while she and officers were treating his wounds.

{¶13} A detective investigating the case testified that, on the evening of July 6, 2020, Casey voluntarily presented himself to the police station to speak with officers. The detective conducted a recorded interview with Casey, which was played for the jury. During the interview, Casey stated that he had left his apartment on the night of July 5, 2020, and when he returned, he heard Moore yelling inside Moore's apartment. Moore opened the door of his apartment while Casey ascended the stairs, and Moore continued yelling. Casey told him to "chill out," and Moore responded aggressively. Moore was holding a kitchen knife and located in the hall by Casey's door, and Casey obtained a gun from his apartment and left the apartment. Casey walked backward down the front steps heading outside, and Moore saw the gun and said, "what you going to do with that" and came toward him with the knife, threatening to stab him. When Casey was outside within arm's reach of Moore, and Moore was propping the door open with his shoulder, Casey shot Moore. Casey indicated the moment of the shooting was "a blur." Thereafter, Casey's girlfriend ran down the steps. He gave the girlfriend the gun, who returned it to their apartment, and then she and Casey left and did not come back.

{¶14} However, Casey testified at trial that he lied during the interview with the detective because he was nervous and scared. Casey acknowledged that Moore was not wielding a knife during the altercation. Casey testified that he is 5'5" tall and weighs

5

88 pounds and he carries a gun in his pants pocket. He maintained Moore had consistently "crack[ed] on" him due to his size, calling him "little guy" and "little mother f****r." Casey indicated that he had become accustomed to being ridiculed for his size, as it had occurred throughout the course of his life. On the day at issue, prior to the shooting, he had gone to the Waffle House to pick up food for his girlfriend. He returned to the apartment at approximately 1:00 a.m. When he arrived, Moore was in the hallway yelling, screaming, and banging on the walls. Casey asked him to quiet down because his children were sleeping. Casey then testified regarding Moore's reaction as follows:

> He grew violent and just said he was going to beat my a**. He was going to f*** me up. And "Little mother f****r" this. "I'll kill your b*tch a**." Excuse my French. I'm sorry. You know. So as he says that I said, "Chill out." And he says "No. You make me chill, mother f****r." And he pushes me. I fell down the stairs. I get up. He pushing me again out the door. As I go out the door, at this point I'm terrified, I don't know what's going on, you know. I know he's known to carry a weapon. I didn't know if he had a weapon or not. I know he's known to carry a weapon. He's a very violent person. I didn't want to be beat to a pulp. I got scared and just starting shooting."

{¶15} Casey then went in his apartment, and he and his girlfriend and children left because they feared retaliation. He and his family drove to a nearby parking lot. Casey maintained he never entered Moore's apartment. On cross-examination, Casey again acknowledged that his statement to the detective consisted of several lies. Casey recalled that Moore was exiting the building when he shot him, but Casey could not recall the location that he shot from. On recross, Casey maintained that he suffers from anxiety and PTSD, but he had no documentation with him at that time regarding these diagnoses.

{¶16} Officers testified that spent casings were located in the parking lot, and projectiles retrieved from the building indicated that the shots were fired from outside the

6

apartment building toward the building, as one projectile was located lodged in the outside area of the building under the front door kickplate.

{¶17} On appeal, Casey argues that because the shooting occurred in the common areas of the apartment complex, he had no duty to retreat. Premised upon his lack of duty to retreat, Casey maintains that his convictions are based upon insufficient evidence and are against the weight of the evidence.

{¶18} "[W]hether sufficient evidence has been presented to raise an affirmative defense of self-defense is a question of law." (Citations omitted.) *State v. Gambino*, 11th Dist. Trumbull No. 2021-T-0018, 2022-Ohio-1554, ¶ 20. "'After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *Gambino* at ¶ 20, quoting *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143 & 2019-L-144, 2020-Ohio-1439, ¶ 30, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus, construing Crim.R. 30(A).

{¶19} "Ordinarily, a trial court must give a requested jury instruction if it is a correct statement of law, it is applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction." (Citations omitted.) *Gambino* at ¶ 21. "When an instruction is not applicable to the facts governing the case, the court may refuse to give the requested instruction." (Citations omitted.) *Id.*

{¶20} "The defendant is required to meet the burden of production with sufficient evidence to make a prima facie case for self-defense." (Citation omitted.) *Gambino* at ¶ 22. "The General Assembly amended the provisions in R.C. 2901.05 that define self-defense effective on March 28, 2019." *Id.* "Under the former version of R.C. 2901.05(A),

7

the accused had the burden of proving that he or she had used force in self-defense by a preponderance of the evidence." *Id.* "The amended version of R.C. 2901.05 places the burden of persuasion upon the State to disprove at least one of the elements of self-defense beyond a reasonable doubt." (Citation omitted.) *Id.*; R.C. 2901.05(A).

{¶21} "The elements of a valid claim of self-defense are: '(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger.'" *Gambino* at ¶ 23, quoting *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 41 (11th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus; *State v. Mogul*, 11th Dist. Trumbull Nos. 97-T-0018 & 97-T-0067, 1998 WL 258164, *3 (May 15, 1998).

{¶22} Here, the trial court gave instructions on self-defense and the state's burden. However, it denied defense counsel's request to include an instruction as to the "castle doctrine" as contained in the former version of R.C. 2901.09(B), which provided:

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

8

{¶23} "'Residence' has the same meaning as in R.C. 2901.05." *State v. Hodgson*, 2021-Ohio-4374, 182 N.E.3d 417, ¶ 106 (11th Dist.), citing R.C. 2901.09(A). R.C. 2901.05(D)(3) provides that "residence" is "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." A "dwelling" refers to "a building or conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is temporary or permanent or is mobile or immobile. As used in this division, a building or conveyance includes, but is not limited to, an attached porch, and a building or conveyance with a roof over it includes, but is not limited to, a tent." R.C. 2901.05(D)(2).

{¶24} Here, the evidence as to Casey's location when he began shooting consisted of Moore's testimony that Casey was positioned in the parking lot, and the officers' testimony regarding the location of the spent casings. Although a front porch is part of a "dwelling" pursuant to R.C. 2901.05(D)(2), the definition of a dwelling does not extend to parking lots and driveways. *Hodgson* at ¶ 108 (shared "campfire is analogous to other areas close to a residence that has not been considered part of a 'dwelling'"), citing *State v. Moore*, 2020-Ohio-4321, 158 N.E.3d 111, ¶ 28 (4th Dist.) (driveway not a residence under R.C. 2901.05(D)(3) because it is not a dwelling under R.C. 2901.05(D)(2)). Accordingly, the trial court did not error in failing to provide an instruction negating Casey's duty to retreat, and his second assigned err lacks merit.

{¶25} Casey next argues that because the court failed to properly instruct the jury on self-defense, his convictions are based upon insufficient evidence and are against the manifest weight of the evidence. To the extent that these arguments appear contingent

9

upon this court finding merit to Casey's second assigned error, his third and fourth assigned errors are likewise without merit.

{¶26} Further, to the extent that Casey intended a broader challenge to the sufficiency and manifest weight of the evidence, the only witnesses to the shooting were Casey and Moore. Despite some inconsistencies in the evidence, the jury, as arbiter of credibility, was free to believe Moore's version of events. *State v. Beaver*, 11th Dist. Trumbull No. 2011-T-0037, 2012-Ohio-871, ¶ 60 ("An appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses."). This is not the extraordinary case where the evidence weighs heavily against the conviction. *Beaver* at ¶ 60, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546 (1997). Because the conviction is not against the weight of the evidence, it is necessarily supported by sufficient evidence. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17 ("When the appellant challenges both the sufficiency and the manifest weight of the state's evidence in an appeal, the appellate court need only address the manifest weight argument because the conclusion that a verdict is not against the manifest weight necessarily entails the additional holding that it is also supported by sufficient evidence."). Accordingly, the remainder of Casey's third and fourth assigned errors are not well taken.

{¶27} In his first assigned error, Casey argues:

{¶28} "The trial court erred in allowing a conviction despite ineffective assistance of counsel."

{¶29} Casey maintains that counsel was ineffective for failing to properly impeach witnesses and failing to provide mitigating evidence of PTSD.

Case No. 2021-T-0029

{¶30} To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate "(1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different." *State v. Hope*, 2019-Ohio-2174, 137 N.E.3d 549, ¶ 88 (11th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶31} In Ohio, every properly licensed attorney is presumed to be competent, and a defendant bears the burden of proving otherwise. *Hope* at ¶ 89, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Prejudice is established by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶32} Here, Casey argues that defense counsel "missed opportunities for impeachment" of Moore and Wright. Casey identifies only one instance of such a missed opportunity, when defense counsel asked Wright, "But your testimony is that after three and a half years of knowing this nice guy, this little guy over here, he walks into your house and starts a fight with your boyfriend; that's your testimony today." Casey then acknowledges that defense counsel "continued to probe the witness, but nothing came of

11

it."    However, Casey does not develop an argument as to how this line of questioning resulted in deficient performance or that he was prejudiced by any deficient performance.

{¶33}  With respect to Casey's argument regarding PTSD, Casey maintains that counsel was ineffective for failing to submit proof of Casey's PTSD diagnosis.   Casey maintains that "[a]t no point did the defense pursue the issue by way of lay or expert testimony to establish that-even though he was medicated for it-Casey was a PTSD case and that some consideration of same had any legal impact on his mental state."  Because this court is limited to the record, we cannot say that Casey was prejudiced by the failure to offer further evidence of his PTSD or the effect of that diagnosis on his mental state. *See State v. Parks*, 11th Dist. Lake No. 2019-L-097, 2020-Ohio-4524, ¶ 142.

{¶34}  Accordingly, Casey's first assigned error lacks merit.

{¶35}  The judgment is affirmed.


MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

12

Case No. 2021-T-0029