[Cite as *State v. Sullivan*, 2020-Ohio-1439.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NOS. 2019-L-143** |
| - vs - | : | **2019-L-144** |
| KEVIN F. SULLIVAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Willoughby Municipal Court.
Case Nos. 2018 CRB 00355 B & 2018 CRB 01014.

Judgment: Affirmed in part, reversed and vacated in part; remanded.

*Judson J. Hawkins*, City of Eastlake Prosecutor, 37811 Lake Shore Boulevard, Eastlake, OH 44095 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, LLC, 8570 Mentor Ave., Mentor, OH 44060 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Kevin F. Sullivan, appeals from a nunc pro tunc judgment entry of sentence issued by the Willoughby Municipal Court on October 22, 2019, in two consolidated criminal cases. The issues on appeal are the manifest weight of the evidence and the denial of a request for a jury instruction. For the reasons that follow, the trial court's judgment is affirmed in part, and reversed and vacated in part.

**Procedural History**

{¶2} On February 5, 2018, two complaints were filed against appellant in the Willoughby Municipal Court, alleging he committed two first-degree misdemeanor offenses: Domestic Violence, in violation of R.C. 2919.25(A), and Assault, in violation of R.C. 2903.13(a).

{¶3} Appellant was accused of punching his girlfriend Lisa Schiefer ("Lisa") in the face with a closed fist, causing a large bruise above her left eye, and of attacking Amanda Smith ("Amanda") with a chair and repeatedly punching her in the chest with a closed fist, causing a bruise. Lisa lived with appellant; Amanda is Lisa's niece. Both women obtained a protection order against appellant after he was released on bond.

{¶4} On April 5, 2018, appellant was accused via complaint of violating the domestic violence protection order protecting Lisa, in violation of R.C. 2919.27(A)(1), a first-degree misdemeanor. Appellant had been found at a local bar, which police officers determined was within 500 feet of Lisa's home.

{¶5} Trial was held before a jury on August 7, 2018, on all three complaints. The jury found appellant "guilty" of Assault and Violating a Protection Order. Appellant was found "not guilty" of Domestic Violence. The trial court issued a judgment entry on August 24, 2018, reflecting the jury's verdicts.

{¶6} Appellant was sentenced on September 18, 2018. To the charge of Assault, appellant was fined $200.00 and ordered to serve 180 days in jail, with 135 days suspended. To the charge of Violating a Protection Order, appellant was fined $150.00 and ordered to serve 180 days in jail, with 180 days suspended. He was

further ordered to 12 months on probation in each case, to run concurrently, which included a condition of no contact with Lisa.

{¶7} Following the sentencing hearing, the trial court issued judgment entries reflecting the sentences imposed. These entries did not, however, restate the fact of conviction. Thus, appellant's delayed appeals from these entries were dismissed for lack of final, appealable orders. *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-004 & 2019-L-005, 2019-Ohio-4413, ¶3 (citations omitted) ("'A judgment of conviction shall set forth the fact of conviction and the sentence.' Crim.R. 32(C). A final appealable order does not exist unless the fact of conviction and the sentence are stated in a single judgment.").

{¶8} The trial court issued a nunc pro tunc judgment entry on October 22, 2019, which set forth the fact of conviction and the sentence in each case. Appellant filed timely appeals from this final, appealable order and raises two assignments of error.

**Mootness**

{¶9} Preliminarily, we must determine whether there is a justiciable controversy for this court to decide or whether the appeals have been rendered moot. "[I]t is reversible error for an appellate court to consider the merits of an appeal that has become moot after the defendant has voluntarily satisfied the sentence[.]" *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, ¶18, citing *State v. Berndt*, 29 Ohio St.3d 3, 4 (1987).

{¶10} "'[W]here a criminal defendant, convicted of a *misdemeanor*, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the

3

conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction.'" *State v. Sobczak*, 11th Dist. Portage No. 2018-P-0017, 2019-Ohio-330, ¶13, quoting *State v. Golston*, 71 Ohio St.3d 224, 226 (1994) (emphasis sic). "A collateral legal disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served." *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, ¶10 (citation omitted).

{¶11} "'[A] misdemeanant who contests charges at trial and, after being convicted, seeks a stay of execution of sentence from the trial court for the purpose of preventing an intended appeal from being declared moot and thereafter appeals the conviction objectively demonstrates that the sentence is not being served voluntarily, because no intent is shown to acquiesce in the judgment or to intentionally abandon the right of appeal.'" *Sobczak*, *supra*, at ¶14, quoting *Lewis*, *supra*, at ¶23. "'Conversely, when an appellant completes a misdemeanor sentence *without* requesting a stay pending appeal and does not offer evidence from which an appellate court could infer that the appellant would suffer collateral disability or loss of civil rights stemming from the misdemeanor conviction, the appeal is moot.'" *Id.* (emphasis sic), quoting *State v. Jirousek*, 11th Dist. Nos. 2013-G-3128 & 2013-G-3130, 2013-Ohio-5267, ¶22, citing *Lewis*, *supra*, at ¶23.

{¶12} Appellant was convicted of two first-degree misdemeanors. He did not request a stay of sentence pending appeal from the trial court or from this court. The 180-day jail sentences, with time suspended, and the 12-month term of probation would have been completed prior to the trial court issuing its nunc pro tunc judgment entry of

4

sentence on October 22, 2019. Therefore, appellant is considered to have voluntarily served this part of his sentence.

{¶13} However, the trial court also ordered appellant to pay fines of $200.00 and $150.00, plus court costs in each case. Nothing in the record suggests that appellant has paid the fines or court costs. In fact, as of the date of this opinion, the online dockets of the Willoughby Municipal Court suggest that the total amount of $862.80 remains unpaid on these two cases.

{¶14} We conclude that appellant's unpaid fines and court costs are sufficient to prevent these appeals from being rendered moot, despite the completion of his jail sentence and probation. *See, e.g., State v. Ruley*, 2d Dist. Miami No. 2017-CA-10, 2018-Ohio-3201, ¶7-10; *State v. Laster*, 2d Dist. Montgomery No. 25019, 2013-Ohio-621, ¶3, fn. 1.

### Assignments of Error

{¶15} We proceed to a review of appellant's assignments of error:

> [1.] The jury's finding of guilt and the Appellant's subsequent conviction for violation of a protection order are contrary to the manifest weight of the evidence; therefore, Appellant's conviction for said charge should be overturned, and Appellant should be remanded to the trial court for a new trial on the charge of violation of a protection order.
>
> [2.] The trial court erred to the prejudice of Appellant by denying his request for a jury instruction on self-defense, as to complainant Amanda Smith, which is an affirmative defense to the crime of assault charged. Appellant's conviction for said charge should be overturned, and Appellant should be remanded to the trial court for a new trial on the charge of assault.

5

**Violating a Protection Order**

{¶16} Appellant's first assignment of error challenges his conviction for Violating a Protection Order as being against the manifest weight of the evidence. Within his argument, appellant contends the jury lost its way and created a manifest miscarriage of justice because the state did not present sufficient evidence to sustain his conviction for Violating a Protection Order.

{¶17} A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring); *see also State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "In reviewing the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979); *see also State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶18} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Thompkins*, *supra*, at 387 (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised

6

only in the exceptional case in which the evidence weighs heavily against the conviction.'

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶19} Appellant was convicted of Violating a Protection Order, in violation of R.C. 2919.27(A)(1), which provides: "No person shall recklessly violate the terms of any of the following: (1) A protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code."

{¶20} Lisa had obtained a domestic violence temporary protection order against appellant, pursuant to R.C. 2919.26, on February 6, 2018. The order prohibited appellant from being present within 500 feet of Lisa.

{¶21} Appellant was arrested for violating the order on April 4, 2018. Patrolman Michael Ward testified that appellant was found playing darts with his dart league at the Diamondback Bar in the city of Eastlake. Appellant told Officer Ward that he had written permission from the court to play darts at that bar, but he was unable to produce documentation to that effect.

{¶22} The officer testified that the Diamondback Bar shares a property line with the property on which Lisa's home is situated; her driveway is the only thing separating her house from the back of the bar. Officer Ward affirmed that a football field is 300 feet in length, that 500 feet is equivalent to one-and-two-thirds football fields, and that the bar was within that distance of Lisa's home.

7

{¶23} Appellant contends the officer's testimony, without introducing a map or actual measurement, is insufficient to convict him of violating the order. The state responds that the officer's testimony was admissible pursuant to Evid.R. 701, as his testimony reflected his own perceptions and personal knowledge, and that the jury did not err in relying upon this testimony to convict appellant.

{¶24} Rule 701 of the Ohio Rules of Evidence provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶25} Officer Ward testified in the form of an inference that was rationally based on his knowledge of the length of a football field and on his own perception of the distance from the bar to Lisa's home. His testimony was also helpful to a factfinder's clear understanding of whether appellant was in violation of the order at the time of his arrest. Defense counsel did not object to the admissibility of such testimony nor did it offer evidence to rebut the distance at issue.

{¶26} Additionally, Lisa testified that the Diamondback Bar's patio was "practically in our backyard." She affirmed that the bar is within 500 feet of her residence.

{¶27} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational juror could have found the essential elements of Violating a Protection Order proven beyond a reasonable doubt. The testimony was credible, and there was no conflicting evidence for the jury to consider. In fact, appellant's contention

8

that he had a court order superseding the 500-foot limitation with respect to the Diamondback Bar suggests he was aware his location at the time of his arrest was within that limitation. We conclude the prosecution met its burden of production, and the jury did not create a manifest miscarriage of justice by convicting appellant of violating the order protecting Lisa.

{¶28} Appellant's first assignment of error is without merit.

### Assault

{¶29} Appellant's second assignment of error relates to his conviction for Assault against Amanda. Appellant contends the trial court erred by denying his request for a jury instruction on the affirmative defense of self-defense, because sufficient evidence was presented that he was not the first aggressor.

{¶30} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus, construing Crim.R. 30(A).

{¶31} At the time of appellant's trial, the burden of going forward with the evidence and the burden of proof for the affirmative defense of self-defense was upon the accused. *See* R.C. 2901.05(A) (eff. Sept. 9, 2008).[1]

{¶32} To establish the use of nondeadly force was justified, the accused must prove by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the event in which the use of force occurred, and (2) he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in

---

1. Am.Sub.H.B. No. 228 of the 132nd General Assembly, effective March 28, 2019, amended R.C. 2901.05 and, inter alia, shifts the burden of proof for self-defense claims to the prosecution.

9

imminent danger of bodily harm. *See* 2 CR Ohio Jury Instructions 421.21 ("self-defense against danger of bodily harm"); *State. v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶66-68; *State v. Buckley*, 11th Dist. Lake No. 2018-L-118, 2019-Ohio-3991, ¶34; *State v. Imondi*, 11th Dist. Lake No. 2014-L-019, 2015-Ohio-2605, ¶18.

{¶33} "In determining whether a self-defense jury instruction is warranted, we look to 'whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" *Imondi, supra*, at ¶17, quoting *State v. Melchior*, 56 Ohio St.2d 15 (1978), paragraph one of the syllabus. Because sufficiency is a question of law, "[o]ur standard of review for determining whether the trial court properly refused to give a jury instruction is de novo." *Id.* (citation omitted).

{¶34} "[I]n order for the defendant to successfully raise an affirmative defense, '* * * evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come.'" *Melchior, supra*, at 20, quoting *State v. Robinson*, 47 Ohio St.2d 103, 111-112 (1976). "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* (internal citations omitted).

{¶35} The altercation at issue took place on February 5, 2018, in the morning hours following Super Bowl Sunday. Appellant and Lisa were living together at a home in Eastlake, as well as with Lisa's son and toddler-aged granddaughter.

10

{¶36} Lisa testified that she struggled with an addiction to painkillers for many years, off and on, and that appellant supplied her with prescription pills. On the date in question, Lisa was trying to maintain her sobriety, but appellant wanted to go to a bar and attempted to give her pills. Lisa testified she did not drink or take any pills that day and that the couple were fighting throughout the day. After the duo ended up at the Diamondback Bar, Lisa left and walked home because appellant was acting "belligerent" and had slammed a bar stool into her leg.

{¶37} Lisa's son was at the house momentarily, and Lisa told him of the arguments she had with appellant that day. Amanda and her friend, Lindsay, were also at the house to sit with Lisa and assist with her granddaughter.

{¶38} Appellant returned to the house after the granddaughter had been put to bed. Lisa testified that "first he was banging on the windows outside * * * and then he walked in the door and told Amanda to get out of his house and that I could get out of his house too." She said appellant was acting "very belligerent, very nasty, very mean, very angry" and was "very intoxicated." Appellant and Amanda were yelling at each other when Lisa stood up and said, "enough is enough, the baby is sleeping." Suddenly, Lisa said, appellant punched her in the side of the head and in the face. She fell to the floor and thought she was having a seizure. Appellant then kicked her in the side of the head, and she heard Amanda scream.

{¶39} Lisa testified that she heard Amanda hit appellant, and then heard Amanda and appellant fighting. She said appellant "was plowed into a corner on top of [Amanda] just punching her and punching her and punching her and punching." Lisa

got up and tried to get appellant away from Amanda by hitting and choking him from behind. She testified that appellant also threw Lindsay over an outside railing.

{¶40} Amanda testified consistent with Lisa about the state appellant was in when he returned home from the bar and that Lisa was not under the influence that night. Appellant was calling Lisa names and degrading her. Then appellant punched Lisa with his fist, and she "flew backwards like five feet" and hit her head on the floor. Appellant approached Lisa as though he was going to hit her again, so Amanda hit appellant in the back with a chair. Appellant then backed Amanda into a corner and punched her multiple times with his fist. Lisa got up and tried to pull appellant off Amanda, but he pushed her away and continued punching Amanda.

{¶41} The police were called and arrived shortly thereafter. Patrolman Hyla reported to the scene. He testified that both women had visible injuries, and neither woman appeared to be under the influence of drugs or alcohol. Patrolman Hyla testified that the statements the women gave to police that evening were consistent with their trial testimony. Appellant appeared to be highly intoxicated—his speech was slurred and slow, he smelled of alcohol, and he was unable to balance or walk on his own. Appellant refused to answer any questions at the scene. The officer did not observe any marks on appellant except for bruising on the outside of his hands.

{¶42} Appellant was arrested. Lisa and Amanda both reported to the hospital that night for their injuries.

{¶43} Appellant gave a verbal statement to Officer Stanley at the police station, but he declined to give a written statement. Officer Stanley testified as to this statement:

12

> He [appellant] said that he was at the Diamondback bar, which is next door to the house he lives in, watching the Super Bowl, drinking. During that time he was getting text messages from Lisa's son about the way he was speaking to Lisa earlier that day. The text messages upset him. When he returned home, he said that Lisa and the other two females at the house confronted him, started pushing him around, shoving him. He was knocked down to the ground and while he was going to the ground, he swung and hit Lisa in self-defense.

Appellant told the officer that he was shoved from the front and that he swung up and hit Lisa in self-defense while he was falling to the ground:

> He then went to the ground to his knee. Once he was on the ground he was being kicked and punched by the women. He was on his back and swung back in self-defense. After hitting the women in self-defense, he turned back around, protect his head with his arms and took more kicks from the women. Sometime after that the women stopped hitting him and called 911.

The officer observed marks on appellant's knee and hand, and appellant appeared intoxicated due to slurred speech and the smell of alcohol.

{¶44} Appellant testified on his own behalf. According to appellant, Lisa was drinking and taking pills that evening. Appellant testified that Lisa wanted another pill when they were at the Diamondback Bar, but he did not have any more. Lisa became angry and left. Appellant started getting angry phone calls and texts from Lisa's son, and he forwarded some of the texts to Lisa. After the football game, appellant walked home. The following is appellant's version of the altercation that ensued:

> I wasn't out running around pounding windows on the side of the house. I did come in the front door and I was upset, Lisa and I argued, and we both yelled and screaming [sic] at each other. Amanda was there and a friend of Amanda's was there.
>
> Amanda started to get into the argument, which the argument was between Lisa and I, and at one point I stopped, I went in the bedroom for four or five minutes, I was going to cool down, and then I came back out of the bedroom and we started arguing again.

13

Lisa did ask, you know, to keep it down because the baby was sleeping and then we were arguing. Lisa and I were facing each other and Amanda was right off to – right behind Lisa off – off of her right shoulder and so there was the three of us arguing.

And then Amanda starts jumping up and down behind Lisa like – like she wants to punch me, you know, actually physic – you know, throwing punches like over Lisa's shoulder. I don't know, at that point all of a sudden I was clocked in the right side of the head and I was falling to the floor. My arms went like this and I hit Lisa in the face, I guess. I did not know at the time where I had struck her.

I landed on the floor. Lisa lands on the floor next to me. I seen her hit her head and at that point my concern was for her. Even though she just struck me in the side of the head and knocked me to the floor, my concern was for her. I turned over onto my knees and was crawling to her and Amanda jumped on my back after she hit me with a chair and she was just punching me on both sides of the head.

Now, I'm on my knees, she's on my back, and I started to cover up my head and she wouldn't stop. I decided at that point that I needed to defend myself. So I was able to turn over and get up and she's still swinging at me and I hit her three or four times up here in the chest, not in the face, not in the breasts or stomach or anything just to get her back.

When we got to the corner, I got her onto the floor and I told her just to stop. At that time her friend started kicking me in the side and in the back. I was able to get up and I grabbed Lindsay by her shirt like this and pushed her right out the front door onto the front porch. I wanted to throw her over the railing, but I stopped. I completely stopped right there.

I went back in the house and I sat down in the chair and waited for the police officers to arrive.

{¶45} In determining whether a jury instruction on an affirmative defense should be given, we are mindful that "the court must view the evidence in a light most favorable to the defendant. The question of credibility is not to be considered." *State v. Belanger*, 190 Ohio App.3d 377, ¶6 (3d Dist.2010); *see also Imondi, supra*, at ¶17 ("We evaluate

14

the evidence in a light most favorable to the defense."). When a defendant's testimony, if believed, would have raised the question of self-defense in the mind of a reasonable juror, the defendant's burden of production has been met. *Id.*

{¶46} Appellant testified that he was the first victim of physical force, not Lisa or Amanda, and that he had to defend himself with force because Amanda jumped on his back and continued to strike him with her hand and with a chair. Amanda also testified that she struck appellant with a chair before he punched her. The statement appellant gave police the night of his arrest is consistent with appellant's version of events at trial. Even the prosecutor stated, with regard to Amanda, that "there may be arguably a self-defense claim there, but I don't see it."

{¶47} The jury found appellant "not guilty" of Domestic Violence against Lisa, which suggests the jury may have believed appellant was not at fault in creating the altercation. With regard to appellant's Assault charge against Amanda, a self-defense instruction was relevant and necessary in order for the jury to weigh the evidence— including the credibility of the witnesses—and for the jury to discharge its duty as the fact finder. It appears, however, that the trial court weighed the credibility of the witnesses when it decided not to instruct on self-defense and, thereby, usurped the role of the jury. "'It is reversible error for the trial court to invade that province of the jury.'" *State v. Osborne*, 11th Dist. Ashtabula No. 1150, 1984 WL 7407, *3 (June 29, 1984), quoting *The Painesville Utopia Theatre Co. v. Lautermilch*, 118 Ohio St. 167 (1928) (when "it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate

15

fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function.").

{¶48} We conclude that sufficient evidence, if believed, was presented to support a conclusion that (1) appellant was not at fault in creating the situation that gave rise to his use of nondeadly force against Amanda and (2) appellant feared imminent bodily harm. It was therefore error for the trial court to deny appellant's request for a jury instruction on self-defense.

{¶49} Appellant's second assignment of error is well taken.

{¶50} The judgment of the Willoughby Municipal Court is affirmed in part and reversed in part. Appellant's conviction for Violation of a Protection Order is affirmed, his conviction for Assault is vacated, and this matter is remanded for a new trial solely on the charge of Assault.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

16