[Cite as *State v. Gambino*, 2022-Ohio-1554.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-T-0018** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| WILLIAM L. GAMBINO, JR., | |
| Defendant-Appellant. | Trial Court No. 2020 CR 00777 |

**O P I N I O N**

Decided: May 9, 2022
Judgment: Affirmed

*Dennis Watkins,* Trumbull County Prosecutor, *Ryan J. Sanders,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 Hight Street, N.W., Warren, OH 44481 (for Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (for Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, William Gambino Jr., appeals his conviction in the Trumbull County Court of Common Pleas for felonious assault, aggravated robbery, and weapons under disability. Appellant asserts that the trial court erred in failing to give a jury instruction on self-defense, that his convictions are against the manifest weight of the evidence, and that the trial court erred by failing to merge his felonious assault and aggravated robbery convictions. Finding no reversible error, we affirm.

{¶2} On November 12, 2020, appellant was indicted for one count of Felonious Assault with a firearm specification in violation of R.C. 2903.11(A)(2) and (D)(1)(1) and R.C. 2941.145; one count of Aggravated Robbery with a firearm specification in violation R.C. 2911.(A)(1) and (C) and 2941.145; and one count of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3).

{¶3} At the jury trial, the victim, William Blake, testified that appellant confronted him at Blake's home on October 7, 2020. Appellant had been living at Blake's residence, but Blake believed appellant was stealing from him and kicked him out. Blake also said that appellant had recently become paranoid about sex cults and satanic groups and believed that Blake was molesting his own daughter.

{¶4} Blake came home and found appellant waiting for him in his driveway. Blake asked why appellant was there. Appellant asked for money. Blake refused and told appellant to leave. Appellant refused to do so, and Blake exited his vehicle and approached appellant, who was still in his vehicle. Appellant then exited his vehicle as Blake approached and the two began to argue. Appellant pulled out a pellet handgun and fired it at Blake several times. Appellant then backed away, dropped the pellet gun, drew a .22 caliber pistol, and shot Blake multiple times. Blake retreated and testified that appellant pursued him "smiling while he was shooting at me and saying that I was raping my daughter and I was a child rapist."

{¶5} Appellant then went to Blake's vehicle, took Blake's cell phone, keys, and wallet, and then drove away. After this, Blake went to his vehicle and realized appellant had stolen his items. He then went to a neighbor's house to use a phone to call 911. Blake testified that he was intubated and was in the hospital for 14 days and has had multiple

2

surgeries. He still has a bullet that is lodged in his neck and does not believe he will ever fully recover from his injuries. The shooting was recorded on Blake's home video system which was played for the jury and made part of the record.

{¶6}   Trumbull County Deputy Sheriff Dennis Garito testified that he responded to a shooting call and that he received a description of the shooter and his vehicle. Garito observed appellant's vehicle on the side of the road and appellant ducking down to avoid being seen. Garito turned around and stopped appellant when he pulled into a gas station. Garito recovered Blake's items and a .22 pistol in the vehicle with one live round in the chamber.

{¶7}   Trumbull County Sheriff's Department Detective Jolene Marcello testified that she went to Blake's home to process the crime scene. She located fresh blood, empty shell casings, and a pellet gun in the grass. In addition, she located a wooden box that had been covered with a tarp. Inside the box, there was a .22 rifle and a 12-gauge shotgun and ammunition for both weapons.

{¶8}   Trumbull County Sherriff's Department Sergeant Mike Yannucci testified that he investigated the shooting and initially arrived to process the crime scene but was called away to speak with the appellant who requested to speak with a detective. Yannucci interviewed appellant and the video of the interview was played for the jury. In the video, appellant admitted that he obtained each of the weapons used and found at the scene. Appellant admitted that he took the weapons to Blake's home and hid the long guns behind the house so that he could rely upon them if the conflict with Blake required the extra weapons.

3

{¶9}   Appellant admitted that he waited in the driveway for Blake to arrive home from work. Appellant admitted that he asked for money, that Blake told him to leave, and that he shot Blake when Blake approached him. Appellant claimed that he acted in self-defense because he feared for his safety when Blake approached him. Yannucci testified that appellant continued to argue with Blake and ask for money even after shooting him. Yannucci also identified certified copies of appellant's prior convictions which placed him under disability.

{¶10}   Appellant testified that he shot Blake in self-defense. He said that he waited for Blake in the driveway for four to five hours but said that he did so in order to tell Blake that he was moving into the apartment behind Blake's house based on the permission given to him by Blake's wife.

{¶11}   Appellant testified that he asked for money and that Blake told him to leave. Appellant testified that when Blake got out of his car to approach him, he also exited the vehicle and only began to shoot Blake with the pellet gun to prevent him from coming closer to him. Appellant claimed that Blake laughed at appellant when he shot him with the pellet gun and that he continued to approach him.

{¶12}   Appellant testified that an industrial injury left him physically weak, and that Blake is significantly larger than him. Appellant said that he retreated after shooting Blake with the pellet gun, but that Blake was still approaching. Appellant then dropped the pellet gun and pulled out the .22 pistol and shot Blake multiple times. He testified that after shooting Blake, he pursued him around several cars in the driveway and then when he thought Blake had fled into his house, appellant went to Blake's car and took Blake's keys, wallet, and cell phone. He testified that he took the cell phone because it had

4

evidence of Blake threatening him on it, that he took the wallet because he intended to use it to buy gas, and that he took Blake's keys to prevent him from pursuing him.

{¶13} Appellant admitted to placing the firearms in the backyard of Blake's house and that he waited for four to five hours before the victim arrived. He also testified that Blake was not armed at the time of the shooting and admitted that he initiated the first violent act in the encounter by shooting Blake with the pellet gun. He also acknowledged that he pursued Blake with the .22 pistol when Blake fled. However, he claimed that he acted in self-defense because Blake approached him in anger.

{¶14} Appellant requested a self-defense jury instruction and the trial court declined to give it. The reason the court gave was that appellant prepared for a violent confrontation with Blake, laid in wait to ambush him, and that the evidence indicated that appellant was the initial aggressor and was at fault in creating the confrontation.

{¶15} The jury convicted appellant of all charges and the trial court sentenced appellant on each count with an aggregate prison sentence of twenty-five to thirty years incarceration. Prior to sentencing, appellant argued that the aggravated robbery and felonious assault convictions should merge for sentencing purposes. The trial court disagreed and sentenced appellant on each count.

{¶16} Appellant timely appealed and raises three assignments of error.

{¶17} Appellant's first assignment of error states:

{¶18} "[1.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR, TO THE PREJUDICE OF APPELLANT, BY REFUSING TO GIVE THE JURY A SELF-DEFENSE INSTRUCTION."

5

{¶19} Appellant's first assignment of error asserts that he was prejudiced by the trial court denying his request for a jury instruction on self-defense.

{¶20} This court has held that whether sufficient evidence has been presented to raise an affirmative defense of self-defense is a question of law. *State v. Petway*, 11th Dist. No. 2019-L-124, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 38, *appeal not allowed*, 160 Ohio St.3d 1460, 2020-Ohio-5332, 157 N.E.3d 794, *reconsideration denied*, 160 Ohio St.3d 1512, 2020-Ohio-6835, 159 N.E.3d 1172, citing *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143, 2020-Ohio-1439, ¶ 33. "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *Sullivan*, at ¶ 30, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus, construing Crim.R. 30(A).

{¶21} Ordinarily, a trial court must give a requested jury instruction if it is a correct statement of law, it is applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction. *Petway* at ¶ 40, citing *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. When an instruction is not applicable to the facts governing the case, the court may refuse to give the requested instruction. *Id.*, citing *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55 (1986).

{¶22} The defendant is required to meet the burden of production with sufficient evidence to make a prima facie case for self-defense. *Id.* at ¶ 47. The General Assembly amended the provisions in R.C. 2901.05 that define self-defense effective on March 28, 2019. Under the former version of R.C. 2901.05(A), the accused had the burden of

6

proving that he or she had used force in self-defense by a preponderance of the evidence. The amended version of R.C. 2901.05 places the burden of persuasion upon the State to disprove at least one of the elements of self-defense beyond a reasonable doubt. *Id.* at ¶ 55; R.C. 2901.05(A).

{¶23} The elements of a valid claim of self-defense are:

(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus; *State v. Mogul*, 11th Dist. Trumbull Nos. 97-T-0018 & 97-T-0067, 1998 WL 258164, *3 (May 15, 1998).

*Id.* at ¶ 41. "The degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force." *Id.*, at ¶42, citing *State v. Mogul*, 11th Dist. Trumbull Nos. 97-T-0018 & 97-T-0067, 1998 WL 258164, *3 (May 15, 1998).

{¶24} "[I]n order for the defendant to successfully raise an affirmative defense, '* * * evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come.'" *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978), quoting *State v. Robinson*, 47 Ohio St.2d 103, 111-112, 351 N.E.2d 88 (1976). "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* (internal citations omitted). In determining whether the self-defense instruction is appropriate the "court must view the

7

evidence in a light most favorable to the defendant" without consideration of credibility. *Sullivan, supra*, at ¶ 45, *quoting State v. Belanger*, 3rd Dist. No. 1-09-65, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265, at ¶ 6. The defendant has met the burden of production when the defendant's testimony, if believed, would raise the question of self-defense in the mind of a reasonable juror. *Id.*

{¶25} Appellant contends that the facts of his case warrant a jury instruction on self-defense. He argues that Blake acted aggressively toward him and that the size disparities between the two made appellant fearful that Blake would cause him injury. For this reason, appellant produced the pellet gun to cause Blake to retreat. He further argues that when he shot Blake with the pellet gun, Blake laughed and continued to aggressively approach while appellant retreated and put distance between the two before using the .22 pistol.

{¶26} However, this argument is unpersuasive based on the evidence presented at the trial and, in particular, the video evidence of the shooting. Appellant's self-defense arguments fail because appellant, by his own admission, committed the first act of violence in the confrontation. Simply, appellant failed to put forth sufficient evidence to meet his burden of production. Although he asserted that he was in fear of great bodily harm because Blake approached him aggressively, this goes to his belief that he was in danger of great bodily harm, the second element of self-defense. However, appellant did not meet his burden of production as to the first element. Appellant admitted that Blake told appellant to leave, that he refused, and that he initiated the first violent act by shooting Blake with the pellet gun. He failed to adduce evidence to satisfy his burden of production that he was not at fault for creating the situation giving rise to the affray.

8

Case No. 2021-T-0018

{¶27} When Blake arrived, appellant asked Blake for money and refused to leave when Blake told him to get off his property. Appellant testified that he stepped out of his vehicle and could have avoided any perceived danger by not getting out of his vehicle or simply driving away. He also testified that he knew that Blake was not armed at the time of the confrontation. The video does not support appellant's portrayal that Blake continued to aggressively pursue him after being shot with the pellet gun. Instead, the video shows that Blake stopped after being struck by the pellet gun and that appellant quickly discarded the pellet gun and began firing at Blake with the .22. Finally, if appellant's self-defense claims were true, appellant violated his duty to disengage once he had neutralized the perceived threat. In this case, his own testimony acknowledged that he used more force than what was reasonably necessary when firing at and pursuing Blake. *See Petway, supra*, at ¶ 42.

{¶28} Even viewing the evidence in a light most favorable to the appellant, he did not present sufficient evidence that, if believed, would raise the question of self-defense in the mind of a reasonable juror. *See Sullivan, supra*, at ¶ 45.

{¶29} Accordingly, appellant's first assignment of error is without merit.

{¶30} Appellant's second assignment of error states:

{¶31} "[2.] APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶32} Next, appellant argues that his conviction is against the manifest weight of the evidence because it is not supported by competent, credible evidence that proved his guilt beyond a reasonable doubt. Appellant points to evidence suggesting that he had permission to reside at Blake's address and to be on the property, that Blake was angry

9

and agitated as the encounter developed, that Blake's large size and appellant's physical disability created a reasonable fear in appellant, and that Blake had access to weapons on his property. This evidence, according to appellant, indicates that the jury lost its way in finding him guilty.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them." (Emphasis sic.)

*State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶33} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶34} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The

10

Case No. 2021-T-0018

trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case, and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67.

{¶35} This court, engaging in the limited weighing of the evidence introduced at trial, must defer to the weight and factual findings made by the jury. *State v. Brown*, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶36} In this assignment, appellant couches many of his arguments in terms of reasonable self-defense. However, as our discussion in the prior assignment found, the trial court did not err in refusing to give the jury a self-defense instruction. Therefore, to the extent that appellant believes the jury lost its way in relation to self-defense, our resolution of the prior assignment of error resolves that question in the negative.

{¶37} Appellant's arguments that do not specifically relate to self-defense are also without merit. Appellant's own testimony was that he collected weapons, hid several on Blake's property for possible use, waited four to five hours for Blake to arrive at his house, engaged in a confrontation with him about money, initiated the first act of violence by firing at Blake with the pellet gun, shot Blake multiple times with the .22 pistol, pursued a fleeing and wounded Blake with a gun, only to then steal Blake's wallet, keys, and cell phone from his car. On appellant's own testimony, the evidence shows "clearly to the jury that the party having the burden of proof" was entitled to its verdict. *See Thompkins, supra*, at 386. This is not the extraordinary case where the "jury clearly lost its way and

11

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See Id.* at 387.

{¶38} Accordingly, appellant's second assignment of error is without merit.

{¶39} Appellant's third assignment of error states:

{¶40} "[3.] THE TRIAL COURT ERRED BY FAILING TO MERGE THE FELONIOUS ASSAULT CHARGE WITH THE AGGRAVATED ROBBERY CHARGE FOR SENTENCING PURPOSES."

{¶41} Appellant's final assignment of error asserts that the trial court erred by failing to merge his aggravated robbery and felonious assault charges because the two offenses are not dissimilar in import or significance. He argues that there was only one victim of each offense and that separate harms cannot be demonstrated. He further argues that the State presented a theory of the case in which appellant committed the crimes with a single animus and as part of the same transaction.

{¶42} In response, the State argues that the offenses caused separate and identifiable harms. The State points to the extreme harm appellant caused by the felonious assault which required Blake to undergo seven surgeries and to endure ongoing injuries from which Blake will never fully recover. The felonious assault began by appellant demanding money from Blake, which caused an argument between the two and resulted in appellant shooting Blake with both a pellet gun and a .22 pistol. In contrast, the State points to the distinct harm appellant caused by the aggravated robbery, particularly as he continued demanding money even after shooting Blake. The State argues that appellant's pursuit of Blake, his continued demands for money after the

12

Case No. 2021-T-0018

shooting, and his subsequent theft of Blake's items constituted separate acts with a separate animus that is distinct from the felonious assault.

{¶43} R.C. 2941.25, Ohio's merger statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶44} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus. "An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 31.

{¶45} "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable harm from the harm of the other offense." *Id.* at ¶ 26. "In *Ruff*, the Supreme Court 'provided two alternatives to determine whether the offenses are of dissimilar import: separate victims or separate harms.'" *State v. Crawford*, 11th Dist. Lake No. 2020-L-074, 2021-Ohio-785, ¶ 45 *appeal not allowed,* 163 Ohio St.3d 1454, 2021-

13

Ohio-2069, 169 N.E.3d 685, quoting *State v. Carradine*, 8th Dist. Cuyahoga No. 101940, 2015-Ohio-3670, ¶70, (Gallagher, J., concurring).

{¶46} In *State v. Stanley*, 11th Dist. Lake No. 2020-L-065, 2021-Ohio-108, this court considered whether aggravated robbery and attempted murder offenses should have merged. We found "that the level of violence inflicted upon the victim and the resulting injuries were far in excess of that necessary to commit the Aggravated Robbery." *Id.* at ¶ 25. The evidence in that case demonstrated a separate purpose or animus to kill the victim beyond the purpose of robbing him. *Id.* Further, we held that separate harms may result from the terror instilled when being robbed at gunpoint and the trauma endured by receiving life threatening injuries from being shot multiple times at close range. *Id.* at ¶ 26, citing *State v. Elem*, 8th Dist. Cuyahoga No. 105821, 2018-Ohio-1194, ¶ 16. This same logic applies with equal force to aggravated robbery and felonious assault offenses, where a shooting constituting "a greater use of force than necessary to accomplish the robbery" may result in a separate act with a separate animus. *State v. Williams*, 11th Dist. Trumbull No. 2012-T-0053, 2013-Ohio-5076, ¶ 60.

{¶47} In this case, appellant's conduct shows that the offenses were committed with a separate animus. After appellant shot Blake, he went to Blake's vehicle to take his items. At trial, he testified that he stole the items because the cell phone had evidence of Blake threatening him on it, that he took the wallet because he intended to use it to buy gas, and that he took Blake's keys to prevent him from pursuing him. This demonstrates a separate animus from the animus appellant had in committing the felonious assault.

{¶48} Further, although appellant demanded Blake give him gas money, he also had a separate violent animus evidenced by his accusation – as he was shooting and

14

pursuing Blake – that Blake was a child rapist. This demonstrates that appellant had two separate motivations: first, to obtain gas money from Blake by force; second, to enact his version of vigilante justice upon Blake, who appellant believed had committed heinous acts. These separate motivations make merger of the aggravated robbery and the felonious assault offenses improper. *See Stanley, supra*, at ¶ 25.

{¶49} Further, the offenses were of dissimilar import because they resulted in separate harms. The first harm Blake suffered was the enduring trauma of his grave injuries which appellant inflicted upon him. Further, the injuries that appellant inflicted upon Blake constituted a greater use of force than necessary to accomplish the aggravated robbery. *See Williams, supra*, at ¶ 60; *Elem, supra*, at ¶ 16. The second harm was the loss of his wallet, car keys, and cell phone after appellant had shot him. This second harm was particularly acute because appellant took the extra steps of taking his wallet, keys, and cell phone from Blake, which delayed him from obtaining aid after appellant shot him. Based on these separate harms, it was proper for the trial court to sentence appellant for the aggravated robbery and the felonious assault.

{¶50} Accordingly, appellant's third assignment of error is without merit.

{¶51} For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.


15

Case No. 2021-T-0018