[Cite as *State v. Brooks*, 2023-Ohio-3986.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2019 CA 0104 |
| LADASIA BROOKS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No. 2018 CR 0832


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      November 2, 2023


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

DAVE YOST                             KATHERINE R. ROSS-KINZIE
OHIO ATTORNEY GENERAL                 ASSISTANT PUBLIC DEFENDER
ANDREA K. BOYD                        250 East Broad Street
ASSISTANT ATTORNEY GENERAL            Suite 1400
30 East Broad Street, 23rd Floor      Columbus, Ohio  43215
Columbus, Ohio  43215

*Wise, J.*

{¶1} This matter is before this Court on limited remand from the Supreme Court of Ohio.

### *Procedural History and Remand*

{¶2} In *State v. Ladasia Brooks*, 5th Dist. Richland App. No. 2019 CA 0104, 2020-Ohio-4123, Appellant appealed her convictions on aggravated burglary, burglary, assault, domestic violence, and criminal damaging to this Court. In her appeal, Appellant argued, *inter alia*, the trial court deprived her a fair trial when it applied the version of R.C. §2901.05, the self-defense statute, which was in effect at the time the offenses occurred, rather than the amended statute in effect at the time of trial which contained burden-shifting changes. This Court found that the burden-shifting changes contained in the newer version of R.C. §2901.05 did not apply retroactively and found that the trial court properly instructed the jury as to Appellant's self-defense claim.

{¶3} The Ohio Supreme Court accepted a discretionary appeal and a certified conflict as to the application of Am.Sub.H.B. No. 228 and found that "H.B. 228 applies to all trials conducted on or after its effective date of March 28, 2019, irrespective of when the underlying alleged criminal conduct occurred."

{¶4} In addressing the arguments before it, the Supreme Court found:

The state also argues that because Brooks claimed she was not trespassing when she entered Myers's home, she may not assert a self-defense claim. Although the state raised this argument in the court of appeals and seemingly in the trial court, it was not addressed by the court of appeals. Since we accepted jurisdiction in this case to answer a

proposition of law and a certified conflict question about the applicability of House Bill 228 to a defendant's trial and nothing more, we will not address the state's argument but instead remand the case to the court of appeals for it to address that argument.

{¶5}    *State v. Ladasia Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, at ¶22.

{¶6}    The Court found that, "if, as the state has argued, Brooks was not entitled to a self-defense claim, then the error that is the subject of the certified question would be harmless." *Id.* at ¶ 24. The Supreme Court then remanded the case back to this Court to "consider whether Brooks was entitled to a self-defense claim." *Id.* at ¶24.

{¶7}    Initially, we note that the issue of whether or not Appellant was entitled to a self-defense instruction was not assigned as error and therefore not addressed in the original appeal.[1]   However, based on the Supreme Court's instructions to this Court to consider same, we shall therefore endeavor to do so now.

### STATEMENT OF THE FACTS AND CASE

{¶8}    For purposes of this limited remand, a review of the facts and procedural history are as follows:

{¶9}    On September 20, 2018, Appellant Ladasia Brooks was indicted with a six-count indictment: Count One: Aggravated Burglary, a felony of the first-degree, in violation of R.C. §2925.11(A)(1); Count Two: Burglary, a felony of the second-degree, in violation of R.C. §2911.12(A)(1); Count Three: Possession of Criminal Tools, a felony of the fifth-degree, in violation of R.C. §2923.24(A); Count Four: Assault, a misdemeanor of the first

---

[1] The state of Ohio did not file a cross-assignment of error, either in this Court or the Ohio Supreme Court, challenging the trial court's decision to instruct the jury on self-defense. Therefore, this issue was never before this Court in the original appeal.

degree, in violation of R.C. §2903.13(A); Count Five: Domestic Violence, a misdemeanor of the first degree, in violation of R.C. §2919.25(A); Count Six: Criminal Damaging, a misdemeanor of the second-degree, in violation of R.C. §2909.06(A)(1).

{¶10} At trial, the State presented the following testimony and evidence:

{¶11} Daniel Myers testified he and Appellant have a five-year-old child together. (T. at 250-251). Mr. Myers broke off his relationship with Appellant in May of 2018. (T. at 250-253). Up until June 5, 2018, the last contact that Mr. Myers had with Appellant was to talk about a birthday party for their daughter several weeks prior to the incident. (T. at 256).

{¶12} On June 5, 2018, the day before their daughter's birthday, Mr. Myers was living at his mother's house at 232 Bartley Avenue in Mansfield, Ohio. (T. at 257). Mr. Myers' mother, Alicia Randolph, had locked the door when she left for work that morning. (T. at 421). Mr. Myers was sleeping in bed with his girlfriend Stephanie Price when he woke up to find Appellant standing in his bedroom. (T. at 261). Appellant then began attacking Ms. Price by striking her in the head and pulling her hair. (T. at 261, 263, 353, 355, 452).

{¶13} Mr. Randolph, Mr. Myers' stepfather, testified that he heard yelling and went to Mr. Myers' room with a baseball bat for protection. (T. at 394). Mr. Myers and Mr. Randolph attempted to get Appellant off of Ms. Price. (T. at 261, 264). Appellant then began attacking Mr. Myers and bit his ear, causing it to bleed. (T. at 261, 277-278, 362). Once Mr. Randolph got Appellant off of Mr. Myers, she fled. *Id.* As Appellant fled, she grabbed Mr. Myers' wallet and stole $70. (T. at 265). Mr. Randolph was able to take a picture of Appellant as she fled down the stairs. (T. at 266-267). Mr. Myers testified that

no one had given Appellant permission to be in the home on June 5, 2019. *(T.* at 253-255, 261-262).

{¶14} After Appellant fled the house, Mr. Myers went downstairs and locked the door for fear that she might return. (T. at 269). Mr. Randolph was able to take two pictures of Appellant as she came back to his house shortly after she fled. (T. at 273). These pictures show Appellant holding the $70 that she had just stolen from Mr. Myers' wallet. Appellant came back to the door and punched the window in the door, breaking it. (T. at 274). After Appellant left the second time, Ms. Price went to the convenience store where her friend, Amy Picheco, worked and told her what happened. Ms. Picheco then called Police. (T. at 277, 358).

{¶15} A year prior to the incident, Mr. Myers' mother, Alicia Randolph, who owns the house, told Appellant that she was no longer welcome in the house after she punched holes in the wall. (T. at 416). Also, in the previous year, Appellant attacked Mr. Myers at his job with mace. (T. at 455-456). Approximately three months prior to the June 5 incident, Mrs. Randolph caught Appellant in her home and again told her she was not welcome and to never return. (T. at 417). Approximately two weeks prior to the incident, Appellant entered the residence and stole Mr. Myers' dog.  (T. at 390). Jackie Randolph, Mr. Myers' stepfather, called Appellant and told her to return the dog. *Id.* When she returned, Mr. Randolph confronted Appellant for taking his dog. (T. at 39). Appellant then produced a can of mace and told him to come out to the street. *Id.* Since the dog was back in his house and Appellant had brought her daughter with her, Mr. Randolph went back into is home. *Id.* Appellant threatened Mrs. Randolph and said that she would come to the house anytime she wanted. (T. at 418).

{¶16} On June 5, 2018, Mr. Myers was seen by a physician, Dr. Revill, and was treated for a human bite wound to his left ear. (T. at 238, 245). Mr. Myers told Dr. Revill that the injury came from being bitten by Appellant. (T. at 245). To treat the injury, Mr. Myers was given a tetanus shot and prescribed the antibiotic Augmentin. (T. at 238-239).

{¶17} Ms. Price did not have health insurance so she did not seek medical attention. (T. at 356- 357). Ms. Price' head hurt for two weeks preventing her from taking showers. (T. at 357). Ms. Price took Advil for the pain, but it did not help. (T. at 367-368). After the incident, Ms. Price felt afraid to be around Mr. Myers for fear that Appellant would attack her again, so she ended their relationship. (T. at 369).

{¶18} Appellant testified at trial and claimed that on May 28, 2018, Mr. Myers had threatened to shoot her, and she filed a police report. (T. at 530-531). Appellant admitted to entering Mr. Myers' house through a door but claimed that she had Mr. Myers' permission to be there. (T. at 500-501). Appellant also admitted to getting into a "tussle" with Mr. Myers and stated that she only bit him after he bit her on the arm first and that he had her pinned down on the bed by her wrists when she bit him. (T. at 505-506).

{¶19} Appellant testified that Myers' step-father then came in to the room and hit her in the left knee with a baseball bat. (T. at 507-508). Appellant further testified that she and Ms. Price then got into a physical altercation. (T. at 508-509). She testified that she threw "Stephanie from here to here so I could get to the door and get out because I didn't know what was going to happen next or who was going to attack me or was my baby going to get hurt. So I fought with Stephanie and got myself to the door." (T. at 509). She further testified that she was afraid for herself and her unborn baby, and explained she was scared "[b]ecause I didn't know if Daniel – you know, if he would bite me … And he

was there with a baseball bat. I didn't know if it was to hit me. I didn't know what Stephanie was thinking. So I was scared because I didn't know what they were going to do to me. There were three of them and one of me." (T. at 536).

{¶20} Appellant stated that she accidently broke the window on the door when she was banging on it because she had left her sandal in the house. (T. at 511).

{¶21} During trial, the State dismissed Count Three.

{¶22} On October 11, 2019, Appellant was found guilty of the remaining counts. The trial court sentenced Appellant to seven (7) years in prison on the aggravated burglary. The court also imposed concurrent terms of seven (7) years for the burglary, six (6) months for the assault, six (6) months for domestic violence, and ninety (90) days for criminal damaging, for a combined total of seven (7) years in prison. Appellant was also given seven days of jail credit and ordered to pay $7 in restitution.

{¶23} The issue now before this Court on remand is:

{¶24} I. WAS APPELLANT ENTITLED TO A SELF-DEFENSE CLAIM?

**I.**

{¶25} Upon review, we find that Appellant was entitled to a self-defense instruction.

### Self Defense under R.C. §2901.05

{¶26} To support a claim of self-defense involving the use of non-deadly force, a defendant must show that "(1) he/she was not at fault in creating the situation giving rise to the affray; (2) he/she had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he/she did not use more force than

was reasonably necessary to defend against the imminent danger of bodily harm." *State v. Paskins*, 200 N.E.3d 684, 2022-Ohio-4024, ¶ 48 (5th Dist.).

**{¶27}** In *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, the Ohio Supreme Court clarified the burden of proof where a defendant asserts a claim of self-defense under the version of the statute that became effective March 28, 2019. It recognized that "R.C. 2901.05(B)(1) triggers the state's duty to disprove self-defense so long as 'there is evidence presented that tends to support that the accused person used the force in self-defense' " - a burden that is not all that heavy. *Id.* at ¶ 20, 22 ("The reference in R.C. 2901.05(B)(1) to 'evidence presented that tends to support' self-defense indicates that the defendant's burden of production is not a heavy one and that it might even be satisfied through the state's own evidence."). As such, "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden," and the state must then disprove self-defense. *Id.* at ¶ 25. In that case, "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Id.* at ¶ 26.

### *Standard of Appellate Review*

**{¶28}** While the abuse of discretion standard has traditionally been applied when reviewing the propriety of giving a particular instruction, this standard is not applicable in

light of the language of the self-defense statute, R.C. §2901.05, and its recent interpretation by the Ohio Supreme Court. The Ohio Supreme Court has expressly declared the sufficiency standard in *State v. Messenger*, supra: "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production [that he was acting in self-defense] and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion [that he was not acting in self-defense]." *Id.* at ¶ 26; *State v. Asp*, 2023-Ohio-290, 207 N.E.3d 893, ¶ 56 (5th Dist.).

**{¶29}** The standard has also been described as *de novo*. *State v. Robinette*, 2023-Ohio-5, 205 N.E.3d 633, ¶ 39 (5th Dist.); *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143 and Lake Nos. 2019-L-144, 2020 WL 1847387, 2020-Ohio-1439, ¶ 33 ("[b]ecause sufficiency is a question of law, '[o]ur standard of review for determining whether the trial court properly refused to give a jury instruction is de novo' ") (citation omitted). Regardless of whether it is described as a sufficiency or a de novo standard, what is essential for appellate review is that, "if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *Messenger* at ¶ 25. The Supreme Court has also recognized that the defendant's burden is not a demanding one: "[t]he reference in R.C. 2901.05(B)(1) to 'evidence presented that tends to support' self-defense indicates that the defendant's burden of production is not a heavy one and that it might even be satisfied through the state's own evidence." *Id.* at ¶ 22.

**{¶30}** Thus, under the law as currently written, the trial judge assumes the role of a gate-keeper to determine whether evidence was presented from any source that tends

to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence. However, when exercising its gate keeper function to determine whether the jury should be instructed on self-defense, the trial court should only concern itself with whether the evidence produced at trial "tends to support" that Appellant used force in self-defense. If it has, then the jury must decide whether the state has disproved beyond a reasonable doubt that the accused person used the force in self-defense, defense of another, or defense of that person's residence. *State v. Robinette*, 5th Dist. No. 2021 CA 00124, 2023-Ohio-5, 205 N.E.3d 633.

**{¶31}** Under the present version of the law, whether she ultimately used or did not use force in self-defense is a question of fact for the jury to decide after hearing the evidence, judging the credibility of the witnesses and receiving proper instructions on the law from the trial court. *Id.*

### *Analysis*

**{¶32}** Here, we are tasked with deciding whether evidence was presented that tends to support that Appellant used force in self-defense.

**{¶33}** In this case, for the purpose of determining whether Appellant was entitled to a self-defense instruction, the relevant evidence is as follows: Appellant testified that she had permission from Mr. Myers to come in to the house to get money for her daughter's birthday trip to the zoo. (T. at 499-500). She further testified that on the date of the incident she had personal belongings including clothes, toiletries, her credit card, and her social security card in the home. (T. at 497-498, 499-500, 501-502, 509-510). She stated that she only went in to the house to collect the money, not with an intent to commit any offense. *Id.* She testified that when she entered his room, Mr. Myers jumped

out of bed and grabbed her arms, and then, while holding her down on the bed with her arms pinned at her sides, Mr. Myers bit her. (T. at 502, 505-506). She stated that she then bit him to make him let her go. *Id.* She stated that Mr. Myers' stepfather then came into the room with a baseball bat and hit her with it. (T. at 507-509). She explained that she got into a physical altercation with Mr. Myers' girlfriend, Stephanie Price, as she was trying to get away and out of the room, away from Mr. Myers' stepfather and the baseball bat. *Id.* She also testified that she was scared for herself and her unborn baby because there were three people against her in that room. (T. at 536).

**{¶34}** Conflicting testimony was also presented concerning whether Appellant had permission to enter the residence. However, if there is conflicting evidence, the instruction must be given. *State v. Davidson-Dixon, supra* ¶20; *State v. Johnson,* 8th Dist. Cuyahoga No. 110673, 2022-Ohio-2577, 2022 WL 2981506, ¶10. The defendant's testimony alone can be *evidence that tends to support that he used force in self-defense. *See, State v. Sullivan, supra,* 2020-Ohio-1439, ¶45; State *v. Belanger*, *supra*, 190 Ohio App.3d 377, 941 N.E.2d 1265 at ¶6

**{¶35}** This evidence, when construed in Appellant's favor, tends to support her claim that she used force in self-defense. Accordingly, it was necessary, not discretionary, for the trial court to instruct the jury as to the elements of self-defense.

**{¶36}** Based on the foregoing, we answer the issue on remand, whether Appellant was entitled to an instruction on self-defense, in the affirmative.

**{¶37}** Accordingly, this matter is reversed and remanded to the Richland County Court of Common Pleas for further proceedings consistent with the law and this opinion.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/kw 1027